UNITED STATES *v.* ONE SORREL STALLION AND ONE ROAN HORSE.

*(District Court, S. D. California.    August 29, 1892.)*

**1. CUSTOMS DUTIES—VIOLATION OF LAWS—FORFEITURES.**
  Rev. St. §§ 3098, 3099, providing that every person coming from a foreign country adjacent to the United States with dutiable merchandise shall deliver a verified manifest of it at the nearest collection office, on pain of forfeiture of such merchandise, applies to a horse and stallion borrowed temporarily from a neighbor across the Mexican line, the one for herding stock and the other for breeding purposes; the latter not coming within the clause of Act Oct. 1, 1890, (Supp. Rev. St. p. 812,) admitting free certain thoroughbred duly-registered horses.

**2. SAME—EVIDENCE OF INTENT—REMISSION OF FORFEITURES.**
  In the absence of a petition for the remission of the forfeiture, under Rev. St. § 5292, it was immaterial whether or not a deputy collector told the parties that the horses were not subject to duty, since such deputies have no authority to waive the requirements of the law, and since Act June 22, 1874, (18 St. at Large, p. 189,) § 16, requiring the court not to impose the forfeiture when there was no intent to defraud, was repealed by the act of June 10, 1890.

At Law.    Libel to enforce a forfeiture under revenue laws.    Judgment of condemnation.

*J. L. Copeland*, for claimant.

*M. T. Allen*, U. S. Atty., for the United States.

Ross, District Judge.    The libel in this case is to enforce the forfeiture of two horses, under the provisions of sections 3098, 3099, Rev. St. So far as necessary to be stated, they provide, in effect, that every person coming from any foreign territory adjacent to the United States into the United States with merchandise subject to duty shall deliver, immediately on his arrival within the United States, a verified manifest of the merchandise so brought from such foreign territory at the office of any collector or deputy collector which shall be nearest to the boundary line, or nearest to the road or waters by which such merchandise is brought; and it is provided that if any person bringing such merchandise shall neglect or refuse to deliver such manifest, or pass by or avoid

such office, the merchandise subject to duty, and so imported, shall be forfeited to the United States.

The act of October 1, 1890, entitled "An act to reduce the revenue and equalize duties on imports, and for other purposes," (Supp. Rev. St. p. 812,) imposes, with certain exceptions, a duty on horses imported from foreign countries of $30 per head: provided, that horses valued at $150 and over shall pay a duty of 30 per centum *ad valorem*. The act of October 1, 1890, (Supp. Rev. St. p. 847,) exempts from duty any animal imported specially for breeding purposes:

"Provided, that no such animal shall be admitted free unless pure bred, of a recognized breed, and duly registered in the book of record established for that breed: and provided, further, that certificate of such record and of the pedigree of such animal shall be produced and submitted to the customs officer, duly authenticated by the proper custodian of such book of record, together with the affidavit of the owner, agent, or importer that such animal is the identical animal described in said certificate of record and pedigree. The secretary of the treasury may prescribe such additional regulations as may be required for the strict enforcement of this provision."

Section 483 of the same act also exempts from duty—

"Animals brought into the United States temporarily for a period not exceeding six months, for the purpose of exhibition or competition for prizes offered by any agricultural or racing association; but a bond shall be given, in accordance with regulations prescribed by the secretary of the treasury; also, teams of animals, including their harness and tackle, and the wagons or other vehicles actually owned by persons emigrating from foreign countries to the United States with their families, and in actual use for the purpose of such emigration, under such regulations as the secretary of the treasury may prescribe; and wild animals intended for exhibition in zoological collections, for scientific and educational purposes, and not for sale or profit."

The facts of the case, as shown by stipulation of the respective parties and by testimony, are these: One Yorba, a citizen and resident of the republic of Mexico, and one McCarthy, a citizen and resident of the United States, own adjoining ranchos; the line that divides the two countries being also the line that separates their lands. The roan horse in question is the property of Yorba, and was loaned by him to his neighbor, McCarthy, to be used by his men in herding stock. They were accustomed to ride him on both sides of the line, and the loan was intended to be but temporary. Yorba was also part owner, and in possession and control, of the stallion in question, and in the spring or early summer of 1891, upon the request of McCarthy, loaned the stallion to him for breeding purposes, with the understanding that he was to be returned to Yorba when the breeding season was over. The stallion was not, however, of the character to bring him within the exemption clause of the act of October 1, 1890. There was no attempt at concealment about the matter, and both animals were openly kept by McCarthy, from the time of the respective loans until their seizure in this proceeding, without reporting them to the customs officials, or paying duty thereon. The facts and circumstances of the case show, I think, that, whether rightly or wrongly, neither Yorba or McCarthy supposed

that either horse was subject to duty. Indeed, both of them testified that the deputy collector of customs at San Diego told them that they were not so subject; but the testimony of the deputy was to the contrary.

I do not find it necessary to decide this controverted question of fact, for, assuming that the deputy did so inform them, such fact, in this proceeding, would be unimportant. "Deputy collectors have no power to waive the requirements of law." *134,901 Feet of Pine Lumber*, 4 Blatchf. 138. Revenue laws are necessarily rigid, for the opportunities and temptations to perpetrate frauds upon them are very great. They inflict forfeitures and penalties for the nonobservance of their injunctions, without regard, in general, to the motives of the offender. Conk. 739. "Their severity, however," as said by Judge HOFFMAN in *U. S.* v. *Three Trunks*, 8 Fed. Rep. 584, "was, from a very early period in the history of our government, tempered by enactments which permitted the offending or interested party to cause a summary inquiry into the facts of the case by the district judge, by whom the facts so ascertained were to be reported to the secretary of the treasury; and if, in the opinion of that officer, the penalty or forfeiture had been incurred without willful negligence, or any intention to defraud, he was authorized to grant a remission." And the learned judge adds: "In permitting a remission after such proof is furnished, the act went as far as justice or reason requires, or as is consistent with the efficient execution of the revenue laws." The same provision of law is yet in force. Rev. St. § 5292. But no step was taken by the owner or parties interested in the property in question to secure the benefit of it. By section 16 of an act approved June 22, 1874, (18 St. p. 189,) it was provided that—

"In all actions, suits, and proceedings in any court of the United States now pending, or hereafter commenced or prosecuted, to enforce or declare the forfeiture of any goods, wares, or merchandise, * * * by reason of any violation of the provisions of the customs revenue laws, or any of such provisions, in which said action or proceeding an issue or issues of fact shall have been joined, it shall be the duty of the court, on the trial thereof, to submit to the jury, as a separate and distinct proposition, whether the alleged acts were done with an actual intention to defraud the United States, and to require, upon such proposition, a special finding by such jury; or, if such issue be tried by the court without a jury, it shall be the duty of the court to pass upon and decide such proposition as a distinct and separate finding of fact; and in such cases, unless intent to defraud be so found, no fine, penalty, or forfeiture shall be imposed."

If this act was still in force, I would not hesitate to dismiss the libel in this case, for I am satisfied from the evidence that there was in this instance no intention upon the part of either Yorba or McCarthy to evade the revenue laws or to defraud the United States. Yorba certainly had nothing to gain by doing so, and it would be unreasonable to suppose that he would have loaned the horses to McCarthy if he had had any idea that by doing so he would have subjected his property to forfeiture. But section 16 of the act of June 22, 1874, was sometimes found to result in a failure of justice, as in the case of *U. S.* v. *Purissima*

*Concepcion*, 24 Fed. Rep. 358, and was repealed by the act of June 10, 1890, (Supp. Rev. St. pp. 34, 755,) leaving section 5292 of the Revised Statutes, *supra*, to afford protection against the rigorous application of the laws to cases of accidental and innocent violation of their provisions.

The position that the horses in question cannot be regarded as having been imported into this country because only intended for temporary use here cannot be sustained. Not only would it be a most dangerous precedent to establish that property brought into the United States from foreign countries for temporary use here, and with the intention of returning it to the country from which it comes, is for that reason exempt from duty otherwise imposed upon it, but it would be contrary to the manifest legislative intent as evinced by the fact that property brought into this country from foreign countries temporarily for certain purposes, within which the present case does not come, is expressly exempted from duty otherwise imposed upon it.

There must be judgment of condemnation, and it is so ordered.